UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2021 AUG 19 PM 2: 25

CLERK
BY _____
DEPUTY CLERK

PICKET FENCE PREVIEW, INC.,        )
                                   )
        Plaintiff,                 )
                                   )
    v.                             )        Case No. 2:21-cv-00012
                                   )
ZILLOW, INC.,                      )
                                   )
        Defendant.                 )

## OPINION AND ORDER
## GRANTING DEFENDANT'S MOTION TO DISMISS
(Doc. 15)

Plaintiff Picket Fence Preview, Inc. brings this action against Defendant Zillow, Inc., alleging violations of the Vermont Consumer Protection Act (the "VCPA"), 9 V.S.A. § 2453(a) (Count I); the Lanham Act, 15 U.S.C § 1125 (Count II); and state law unfair competition (Count III); arising out of Defendant's policy of providing free online listings for homes that are for-sale-by-owner ("FSBO"). Plaintiff is seeking compensatory and exemplary damages as well as injunctive relief.

Pending before the court is Defendant's motion to dismiss Plaintiff's Complaint on the grounds that Plaintiff lacks standing to bring suit on behalf of third parties and otherwise fails to state a claim for which relief can be granted. On March 25, 2021, Plaintiff opposed the motion and on April 8, 2021, Defendant replied. On July 13, 2021, oral argument was held, at which time the court took the pending motion under advisement.

Plaintiff is represented by Thomas C. Nuovo, Esq. Defendant is represented by Heather P. Lamberg, Esq., Kevin M. Henry, Esq., and Lauren Gailey, Esq.

## I.    Allegations in the Complaint.

Plaintiff is a FSBO publication business which began in 1993 and was one of the first publications to provide a marketplace where private homeowners could pay to

advertise their property directly to potential buyers, bypassing the use of real estate agents or brokers. "A major incentive for homeowners to advertise with [Plaintiff] is reaching potential buyers directly through [Plaintiff's] publications and avoiding a 6-8% real estate commission" that is typically paid to real estate agents and brokers. (Doc. 12 at 2, ¶ 6.)

Defendant was incorporated in 2004 and launched its website in 2006, which provides an online portal for the general public to advertise real property and realtor services. Plaintiff alleges that Defendant's business depends on its ability to attract advertisers and partners to its online portal, including by "creating an advertising network and providing leads to its Premier Agents." *Id.* at 2, ¶ 8.

Defendant permits FSBO sellers to list their real property on its website at no cost, however, Plaintiff alleges that when an FSBO seller lists real property on Defendant's website, the web-page that a potential buyer sees contains "a big bar below that says 'Contact Agent' prominently displayed." *Id.* at 2, ¶ 11. If a potential buyer clicks on the "Contact Agent" button, they are routed to a "Premier Agent." Each website listing and each page allegedly contains a link that informs "Premier Agents" how to pay to get their name on the listing or to be the only contact for a listing.

To find the seller's contact information on Defendant's website, a potential buyer must click on a tab labeled "Get More Information" which lists the contact information for "Premier Agents" first "and the owner is listed at the bottom of the list." *Id.* In the "Get More Information" section of Defendant's FSBO listings, a potential buyer can enter their contact information to express an interest in a property, however "[e]ven if one checks the owner box the response goes to [Defendant] who connects the buyer with an agent." *Id.* at 3, ¶ 15. Plaintiff alleges that, on some listings, "the only way to find the owner's phone number is to scroll through all of the information, including past a page allowing for contact with an agent as well as a section showing nearby properties and similar homes." *Id.* at 3, ¶ 13.

Defendant's FSBO listings, when viewed on mobile devices such as cell phones and tablets, allegedly often do not have any owner contact information immediately

2

visible, unless the owner includes such information in the description of the real property or the potential buyer scrolls through the entire listing to find the owner's phone number at its end. When viewing an FSBO listing on a cell phone, a "Call Agent" or "Message Agent" button is prominently displayed at the bottom of the screen.

Plaintiff contends that Defendant has "engaged in illegal and unfair methods of competition as well as fraud and deceit by setting up a bait and switch scheme for [its] 'free' listings for For-Sale-By-Owners and then making it difficult, or impossible, for prospective buyers to contact those seller[s] directly." (Doc. 12 at 4-5, ¶ 25.) It asserts that FSBO sellers "may lose potential sales" from these listings "because Premier Agents may redirect potential purchasers to other properties if the [FSBO seller] is not willing to share a commission with the Premier Agent" or if another property would provide the Premier Agent with "a better commission." *Id.* at 5, ¶¶ 26-27. Plaintiff further asserts that Defendant's "pricing scheme is predatory" because while Defendant "claims that it is offering a service for free, [] in reality [it] is charging the Premier Agents so they can advertise on the website of those free ads and receive hijacked inquiries from deceived buyers." *Id.* at 5, ¶ 28.

Because Defendant's FSBO listings allegedly make it "difficult, and in many cases impossible" for potential buyers to contact the FSBO seller directly and instead direct them to Premier Agents, FSBO sellers "end up having to pay a commission" on the sale of their property. *Id.* at 5-6, ¶¶ 35-36. Plaintiff maintains that this practice effectively "hid[es] the fee from the For-Sale-By-Owners and deceive[s] them into believing by listing their property on [Defendant's] site they would avoid commissions." *Id.* at 6, ¶ 37. FSBO sellers thus allegedly "end up paying a significantly higher cost to sell their property than if they had listed it with a traditional For-Sale-By-Owner publication, like [Plaintiff's]," that charges a listing fee. *Id.* at 7, ¶ 48. Plaintiff contends that Defendant "deceives and defrauds the seller who posted the free For-Sale-By-Owner ad as it steals this ad making it neither For-Sale-By-Owner nor free." *Id.* at 9, ¶ 57.

Defendant's FSBO policy allegedly "creates an unfair playing field for legitimate For-Sale-By-Owner publications" because "[p]otential customers have opted for the free

listing of their properties on [Defendant's] site instead of using [Plaintiff.]" *Id.* at 5, ¶ 29. Defendant is able to recoup the cost of the free listings through fees paid to it by the real estate agents who receive the allegedly "hijacked inquiries." *Id.* at 6, ¶ 42. Plaintiff states that Defendant's FSBO policy has allegedly affected "[h]undreds of thousands, to potentially several million customers" and that this has caused "a loss in the millions of dollars" in revenue for Plaintiff. *Id.* at 5, ¶¶ 32, 34. Plaintiff alleges that Defendant's policy has "caused the diversion of millions of dollars in Vermont, New Hampshire, and New York and hundreds of millions of dollars nationwide since 2006 from unsuspecting For-Sale-By-Owners and their buyers." *Id.* at 7, ¶ 43.

Prior to Defendant's offering free FSBO listings on its website, Plaintiff "was enjoying dynamic and consistent growth" and beginning to "expand and franchise its business model." *Id.* at 7, ¶ 44. Because the cost of adding pages to its publication and adding listed properties to its website was relatively low, its profits increased as it gained more customers. Between 1994 and 2006, Plaintiff's revenue grew at a compounded annual rate of 16% per year. Its lost profits in 2017 are estimated at $3,400,000 and, at a projected 16% growth rate, from 2018 to 2030, Plaintiff contends it would have earned over $128,467,758.50 in profits but for Defendant's FSBO services. It alleges it will lose $142,000,000 in profits by 2030 and will have additional losses associated with potential expansion to other markets and franchising fees that it claims are "in the hundreds of millions of dollars." *Id.* at 8, ¶ 54.

Plaintiff asserts that there were numerous other FSBO publications across the country but that it is now one of the last remaining publications of its type due to Defendant's FSBO services.

## II.    Conclusions of Law and Analysis.

### A.    Standard of Review.

"[A] district court may properly dismiss a case for lack of subject matter jurisdiction under Rule 12(b)(1) if it 'lacks the statutory or constitutional power to adjudicate it.'" *Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In

resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016) (internal quotation marks and citation omitted).

To survive a motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff must allege sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

The sufficiency of a plaintiff's complaint under Rule 12(b)(6) is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. The court is also "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* (citation omitted). Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff's claims will prevail. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017).

5

## B.     Whether the Court May Consider Documents External to the Complaint.

Both parties refer to documents submitted as exhibits that are neither cited in nor attached to the Complaint. "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. However, in reviewing a motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), the court may consider only "the factual allegations in [the] plaintiff['s] . . . complaint," "documents attached to the complaint as an exhibit or incorporated in it by reference," "matters of which judicial notice may be taken," and "documents either in plaintiff['s] possession or of which plaintiff had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). "Where a motion to dismiss presents matters outside of the pleadings, the court may consider them but only by converting the motion into one for summary judgment under Federal Rule of Civil Procedure 56." *Ziyan Shi v. N.Y. Dep't of State, Div. of Licensing Servs.*, 393 F. Supp. 3d 329, 336-37 (S.D.N.Y. 2019) (citing Fed. R. Civ. P. 12(d)).

"[A court] may properly take judicial notice of [a] document" when the document is "publicly available and its accuracy cannot reasonably be questioned." *Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016); *see also* Fed. R. Evid. 201(b) ("The court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."). As "matters judicially noticed by the [d]istrict [c]ourt are not considered matters outside the pleadings[,]" the taking of judicial notice does not require the court to convert a motion to dismiss into one for summary judgment. *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 426 (2d Cir. 2008).

Plaintiff and Defendant each ask the court to consider various screenshots of Defendant's website at different dates and as viewable on different electronic devices. [1]

---

[1] Defendant requests that the court take judicial notice of its exhibits. Plaintiff does not make this request.

Plaintiff disputes which exhibits represent Defendant's website as it existed at the time of Plaintiff's Complaint.

"For purposes of a 12(b)(6) motion to dismiss, a court may take judicial notice of information publicly announced on a party's website, as long as the website's authenticity is not in dispute and 'it is capable of accurate and ready determination.'" *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (quoting *Doron Precision Sys., Inc. v. FAAC, Inc.*, 423 F. Supp. 2d 173, 179 n.8 (S.D.N.Y. 2006)). In its reply brief, Defendant concedes that "an exhaustive review of Zillow listings is unnecessary" to adjudication of its motion to dismiss. (Doc. 18 at 9.) Because the accuracy of Defendant's illustrative exhibits is contested and because they are not necessary to the resolution of its motion, the court declines to take judicial notice. It therefore disregards Defendant's exhibits for purposes of the pending motion.

### C.   Whether Plaintiff has Article III Standing to Sue Defendant on Behalf of FSBO Sellers.

"Standing is a federal jurisdictional question 'determining the power of the court to entertain the suit.'" *Carver v. City of N.Y.*, 621 F.3d 221, 225 (2d Cir. 2010) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

> First, the plaintiff must have suffered an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical[.] Second, there must be a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Id.* at 560-61 (internal quotation marks, citations, alterations, and footnote omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements[.]" *Id.* at 561 (internal citation omitted).

"[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'" *Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) (quoting *Warth*, 422 U.S. at 499). The Supreme Court has "recogniz[ed] that there may be circumstances where it is necessary to grant a third party standing to assert the rights of another" but has "require[ed] that a party seeking third-party standing make two additional showings": (1) that "the party asserting the right has a 'close' relationship with the persons who possesses the right" and (2) that "there is a 'hindrance' to the possessor's ability to protect his own interests." *Kowalski*, 543 U.S. at 129-30 (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)).

Plaintiff has not alleged either a "close relationship" with FSBO sellers or a "hindrance" to FSBO sellers' ability to protect their own interests. It therefore lacks standing to bring any claims on FSBO sellers' behalf. Plaintiff clarifies in its opposition brief that it "is not bringing an action on behalf of the individuals who advertised on [Defendant's website.]" (Doc. 17 at 13.) Accordingly, to the extent that Plaintiff's Complaint could be construed to assert claims on behalf of FSBO sellers who advertised on Defendant's website, Defendant's motion to dismiss those claims is GRANTED and all claims that purport to be brought on behalf of FSBO sellers are DISMISSED.

### D. Whether Plaintiff Plausibly Pleads a VCPA Claim Based upon Unfair or Deceptive Acts or Practices.

The VCPA prohibits "unfair or deceptive acts or practices in commerce[.]" 9 V.S.A. § 2453(a). "To establish a 'deceptive act or practice' under the [VCPA] requires three elements: (1) there must be a representation, omission, or practice likely to mislead consumers; (2) the consumer must be interpreting the message reasonably under the circumstances; and (3) the misleading effects must be material, that is, likely to affect the consumer's conduct or decision regarding the product." *Carter v. Gugliuzzi*, 716 A.2d 17, 23 (Vt. 1998)). "Whether an act is 'unfair' is guided by consideration of several factors, including (1) whether the act offends public policy, (2) whether it is immoral, unethical, oppressive or unscrupulous, and (3) whether it causes substantial injury to consumers." *Drake v. Allergan, Inc.*, 63 F. Supp. 3d 382, 393 (D. Vt. 2014).

8

Defendant contends that Plaintiff lacks standing to bring a deceptive acts claim under the VCPA because Plaintiff is not a "consumer" within the meaning of 9 V.S.A. § 2461(b) which provides:

> Any *consumer* who contracts for goods or services in reliance upon false or fraudulent representations or practices prohibited by section 2453 of this title, or who sustains damages or injury as a result of any false or fraudulent representation or practices prohibited by section 2453 of this title, or prohibited by any rule or regulation made pursuant to section 2453 of this title may sue for appropriate equitable relief and may sue and recover from the seller, solicitor, or other violator the amount of his or her damages[.]

9 V.S.A. § 2461(b) (emphasis supplied). The Vermont Supreme Court has held that "[i]n order to recover under the [V]CPA, a plaintiff must establish that they are a consumer." *Messier v. Bushman*, 2018 VT 93, ¶ 24, 208 Vt. 261, 272, 197 A.3d 882, 891; *see also Rathe Salvage, Inc. v. R. Brown & Sons, Inc.*, 2012 VT 18, ¶ 26, 191 Vt. 284, 297, 46 A.3d 891, 902 (observing that "it remains incumbent on [plaintiff] to prove itself a 'consumer' under the [VCPA]").

"The [V]CPA defines a consumer in pertinent part as 'any person who purchases, leases, contracts for, or otherwise agrees to pay consideration for goods or services not for resale in the ordinary course of his or her trade or business but for his or her use or benefit or the use or benefit of a member of his or her household[.]'" *Messier*, 2018 VT 93, ¶ 24, 208 Vt. at 272, 197 A.3d at 891 (quoting 9 V.S.A. § 2451a(a)). In this case, Plaintiff does not allege that it purchased, leased, or contracted for any goods or services from Defendant. Instead, its relationship to Defendant is solely as a competitor in the FSBO market. Plaintiff is thus not a "consumer" under the VCPA and cannot bring a claim thereunder for a deceptive act or practice. *See Rathe Salvage*, 2012 VT 18 ¶ 31, 191 Vt. at 299, 46 A.3d at 903 (finding that a plaintiff was not a consumer under the VCPA where "there was no evidence of any business relationship evident between" the two parties). Defendant's motion to dismiss Plaintiff's VCPA claim for deceptive acts and practices is therefore GRANTED.[2]

---

[2] Plaintiff's reliance on *Elkins v. Microsoft Corp.* for the proposition that it need not purchase a product from Defendant to bring a VCPA claim is misplaced. In *Elkins*, the Vermont Supreme

E.     **Whether Plaintiff Plausibly Pleads a VCPA Claim Based Upon Predatory Pricing.**

In asserting a claim of unfair competition under the VCPA, Plaintiff alleges that Defendant engaged in predatory pricing by offering free listings for FSBOs and "charging the Premier Agents so they can advertise on the website of those free ads[.]" (Doc. 12 at 5, ¶ 28.) Plaintiff further asserts that because Defendant deceptively advertises its services as free while directing consumers to real estate agents who will demand a commission, Defendant engages in unfair competition.

9 V.S.A. § 2461c(a) of the VCPA states that "[n]o person, with the intent to harm competition, shall price goods or services in a manner that tends to create or maintain a monopoly or otherwise harms competition. A violation of this subsection is deemed to be an unfair method of competition in commerce and violation of section 2453 of this title." 9 V.S.A. § 2461c(a). By its plain language, this section of the VCPA does not require a person or entity bringing a claim to be a "consumer."

"[P]redatory pricing occurs when a firm 'bites the bullet and foregoes present revenues to drive a competitor from the market,' with the intent 'to recoup lost revenues through higher profits when it succeeds in making the environment less competitive.'" *Franklin Cnty. Sheriff's Off. v. St. Alban's City Police Dep't*, 2012 VT 62, ¶ 21, 192 Vt. 188, 197, 58 A.3d 207, 214 (quoting *Kelco Disposal, Inc. v. Browning-Ferris Indus. of Vt., Inc.*, 845 F.2d 404, 408 (2d Cir. 1988)). "[A] plaintiff seeking to establish competitive injury resulting from a rival's low prices must prove that the prices complained of are below an appropriate measure of its rival's costs" and "the competitor had a . . . dangerous probability[] of recouping its investment in below-cost prices."

---

Court held that "[t]he language [of the VCPA] does not support the imposition of a privity requirement" and thus an *indirect* consumer has standing to bring a claim under the statute. *Elkins v. Microsoft Corp.*, 817 A.2d 9, 13 (Vt. 2002). Plaintiff does not allege that it is an indirect consumer or that it purchased, leased, contracted for, or otherwise agreed to pay consideration for any of Defendant's goods or services. *See* 9 V.S.A. § 2451a(a); *see also Messier*, 2018 VT 93, ¶ 25, 208 Vt. at 272, 197 A.3d at 891 (finding that plaintiff did not have a VCPA claim where he "did not purchase anything from [defendant] and "[h]is only connection to [defendant] is that [a third party] happens to be insured by them").

*Brooke Grp. Ltd. v. Brown & Williamson Tobacco Corp.*, 509 U.S. 209, 222, 224 (1992) (applying Section 2 of the Sherman Act). "[P]redatory pricing schemes are rarely tried, and even more rarely successful[.]" *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co., Inc.*, 549 U.S. 312 (2007) (internal quotation marks and citation omitted).

Plaintiff asserts that Defendant recoups the cost of offering "free" FSBO listings by charging fees for Premier Agents to advertise on those listings. It has not, however, alleged that Defendant's free listings are not free to FSBO sellers or below an appropriate measure of its costs or that Defendant has a dangerous probability of recouping its investment by raising the price of the FSBO listings once its competitors have been driven from the market. "Unless low prices today will come with high prices tomorrow, only good things happen for consumers." *Energy Conversion Devices Liquidation Trust v. Trina Solar Ltd.*, 833 F.3d 680, 685 (6th Cir. 2016). Plaintiff instead concedes that Defendant's revenue is derived from real estate agents who pay to advertise on Defendant's website. Plaintiff therefore fails to plausibly plead the essential elements of a predatory pricing claim.

Plaintiff's further assertion that Defendant's offer of free FSBO listings has caused it to lose business is insufficient to plead a claim under the VCPA. Even if Plaintiff could plausibly plead lost profits, it does not plausibly plead an injury to consumers. *See Franklin Cnty. Sheriff's Off.*, 2012 VT 62, ¶ 20, 192 Vt. at 197, 58 A.3d at 214 (holding that "[i]t is the protection of competition, rather than the protection of competitors, that antitrust laws are designed to protect"). Consumers may continue to advertise with both Defendant and Plaintiff without any alleged harm to competition. Plaintiff's claims as currently framed plausibly allege only harm to itself, as a competitor, as opposed to harm to the FSBO sellers that use Defendant's website. Harm to a competitor will not suffice. *See Cascade Health Solutions v. PeaceHealth*, 515 F.3d 883, 903 (9th Cir. 2008) (explaining that "antitrust laws do not punish economic behavior that benefits consumers and will not cause long-run injury to the competitive process" even if individual competitors may suffer).

For the reasons stated above, Defendant's motion to dismiss Plaintiff's VCPA claim for unfair competition is GRANTED.

### F.    Whether Plaintiff Plausibly Pleads a Lanham Act Claim.

Pursuant to 15 U.S.C. § 1125(a):

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristic, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Defendant contends that Plaintiff's Lanham Act claim must fail because Plaintiff does not have standing to bring a claim based on Defendant's services and because Plaintiff fails to allege that Defendant made any false statement. "[A] statutory cause of action extends only to plaintiffs whose interests 'fall within the zone of interests protected by the law invoked.'" *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 129 (2014) (quoting *Allen v. Wright*, 468 U.S. 737, 751 (1984)). "[T]o come within the zone of interests in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. Such an injury must "flow[] directly from the deception wrought by the defendant's advertising[,]" which "occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133. The relevant question is "whether the harm alleged is proximately tied to the defendant's conduct." *Id.* at 137; *see also Johnson & Johnson v. Carter-Wallace, Inc.*, 631 F.2d 186, 190 (2d Cir. 1980) (holding that "[t]o prove a

12

likelihood of injury [plaintiff] must also show a logical causal connection between the alleged false advertising and its own sales position").

Plaintiff has alleged that it has suffered economic injury as a result of Defendant's allegedly deceptive FSBO services which has caused consumers to "opt[] for the free listing of their properties on [Defendant's] site instead of using [Plaintiff], a For-Sale-By-Owner paid advertising publication." (Doc. 12 at 5, ¶ 29.) "Since the Lanham Act authorizes suit only for commercial injuries, the intervening step of consumer deception is not fatal to the showing of proximate causation required by the statute." *Lexmark*, 572 U.S. at 133. At the pleading stage, Plaintiff has adequately alleged standing under *Lexmark* to bring a false advertising claim under the Lanham Act.

"To prevail on a Lanham Act false advertising claim, a plaintiff must establish that the challenged message is (1) either literally or impliedly false, (2) material, (3) placed in interstate commerce, and (4) the cause of actual or likely injury to the plaintiff." *Church & Dwight Co. v. SPD Swiss Precision Diagnostics, GmBH*, 843 F.3d 48, 65 (2d Cir. 2016) (citing *Merck Eprova AG v. Gnosis S.p.A.*, 760 F.3d 247, 255-56 (2d Cir. 2014)). "Falsity may be established by proving that (1) the advertising is literally false as a factual matter, or (2) although the advertisement is literally true, it is likely to deceive or confuse customers." *S.C. Johnson & Son, Inc. v. Clorox Co.*, 241 F.3d 232, 238 (2d Cir. 2001) (internal quotation marks omitted). "To establish literal falsity, a plaintiff must show that the advertisement either makes an express statement that is false or a statement that is 'false by necessary implication,' meaning that the advertisement's 'words or images, considered in context, necessarily and unambiguously imply a false message.'" *Church & Dwight Co.*, 843 F.3d at 65 (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 158 (2d Cir. 2007)). "A message can only be literally false if it is unambiguous." *Id.*

Defendant's promise of a "free" FSBO listing is not literally false because, as Plaintiff admits, Defendant does not charge sellers to post FSBO listings on its website. Plaintiff nonetheless maintains that this statement was impliedly false because Defendant did not "disclose that interested shoppers would be directed to Premier Agents." (Doc. 17

at 21.)³ To be impliedly false the statement must be "likely to mislead or confuse consumers." *Apotex*, 823 F.3d at 63 (internal quotation marks and citation omitted). "Such an implicit falsity claim requires a comparison of the impression left by the statement, rather than the statement itself, with the truth." *Id.* (internal quotation marks, citation, and alterations omitted).

Plaintiff fails to point to any representation by Defendant that any sales will be "commission free" or any promise that a real estate agent will not be involved in a subsequent sale. Defendant's only promise to FSBO sellers is that it will list their real property at no cost to them. An FSBO seller remains free to refuse to deal with a real estate agent and free to refuse to pay a real estate agent's commission even if it uses Defendant's website. Defendant's listing focuses only on a preliminary step in a real estate transaction with no promise as to what happens thereafter. Stated differently, a customer who is promised a free listing is not promised a commission free sale either directly or by implication.

Because Plaintiff has failed to allege that Defendant's message was "either literally or impliedly false[,]" *Church & Dwight Co.*, 843 F.3d at 65, within the meaning of 15 U.S.C. § 1125(a)(1), Defendant's motion to dismiss Plaintiff's false advertising claim under the Lanham Act (Count II) is GRANTED..

## G.  Whether Plaintiff Plausibly Pleads a Common Law Unfair Competition Claim.

In opposing Defendant's motion to dismiss, Plaintiff does not address its common law unfair competition claim. Plaintiff also did not address that claim at oral argument. "'Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim[.]'" *Estate of M.D. by DeCosmo v.*

---

³ Plaintiff concedes that, since 2017, Defendant's website has included a disclaimer stating that "[b]y pressing Contact, [potential buyers] agree that Zillow Group and its affiliates, and real estate professionals may call/text [potential buyers] about [their] inquiry." (Doc. 12 at 12, ¶ 81.)

*New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) (quoting *Robinson v. Fischer*, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010)). The court exercises that discretion here.

Because Plaintiff's common law unfair competition claim has been abandoned, Defendant's motion to dismiss it is GRANTED. *See Bonilla v. Smithfield Assoc. LLC*, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (dismissing plaintiff's claims as abandoned by failing to address them in his opposition motion to defendant's motion to dismiss all claims).

### H.   Leave to Amend.

Pursuant to Fed R. Civ. P. 15(a), courts "should freely give leave" to amend a complaint "when justice so requires." Fed. R Civ. P. 15(a). However, "[l]eave may be denied 'for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'" *TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (quoting *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007)). Because at this juncture the court cannot find that any claims asserted by Plaintiff would be futile, and because there is no other ground on which to deny leave to amend, Plaintiff is hereby GRANTED leave to file an Amended Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

## CONCLUSION

Defendant's motion to dismiss (Doc. 15) is GRANTED. Plaintiff's Complaint (Doc. 12) is DISMISSED. Plaintiff is GRANTED leave to file an Amended Complaint within twenty (20) days of the date of this Opinion and Order consistent with the Federal Rules of Civil Procedure and this court's Local Rules.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __14th__ day of August, 2021.

Christina Reiss, District Judge
United States District Court